GUTHRIE, Plaintiff v EMMONS, d. b. a. OHIO VALLEY TRANSPORT COMPANY, Defendant.

FARRIS, Plaintiff v EMMONS, d. b. a. OHIO VALLEY TRANSPORT COMPANY, Defendant.

Common Pleas Court, Hamilton County.

Nos. A-79682 and A-79683. Decided June 9, 1943.

William Isaacs, Cincinnati, and Walter Kelley, Cincinnati, for plaintiff.

Jack B. Josselson, Cincinnati, for defendant.

### OPINION

By ALFRED MACK, J.

Each of above captioned cases is to recover for overtime, liquidated damages and attorney's fee, under the provisions of the National Fair Labor Standards Act of 1938, (52 U. S. Stat., 1060).

In the original petition in each case the allegation with reference to the business of defendant is as follows:

"The defendant is engaged in the trucking business as a public carrier and is engaged in interstate commerce."

In each case a demurrer was filed to the petition and sustained in an opinion of this court dated June 30, 1942. Briefly stated, the ground upon which such demurrer was sustained was that inasmuch as under the broad allegations of the petition the defendant was alleged to be engaged in the trucking business as a public carrier in interstate commerce. by Section 13 of the National Fair Labor Standards Act of 1938, such Act expressly is made inapplicable to any employee with respect to whom the Interstate Commerce Commission had power to establish qualifications and maximum hours of service, and such Interstate Commerce Commission had such power by the Motor Carrier Act of August 9, 1935 (49 U. S. Stat. 543).

In such opinion reference was made to the decisions of U. S. courts holding that the exemption applied whether the Interstate Commerce Commission exercised such power or not.

After such decision plaintiff in each case amended his petition with reference to the character of the business of defendant by substituting for the original allegation the following, viz.:

"The defendant is engaged in the trucking business as a public carrier, and is engaged in the flow of interstate commerce, but does not cross the state line."

To such amended petitions defendant has again filed demurrers. and in support thereof, by brief and in argument, relies upon the ground of exemption expressed in Section 13 of the National Fair Labor Standards Act of 1938, and the provisions of the Motor Carrier Act of August 9, 1935.

Inasmuch as determination of such point depends upon the state of facts disclosed by the amended allegation it is necessary to determine what such amended allegation discloses. As the question arises upon demurrer every intendment favorable to the pleader must be assumed. Bearing this in view, it is this court's opinion that such allegation means that defendant is an intrastate carrier engaged in trucking business solely within Ohio, also picking up freight brought into the state from another state and to be carried by it to some point in Ohio, or vice versa, picking up freight at some point in Ohio and delivering it in Ohio to an interstate carrier.

Turning now to the Motor Carrier Act the following must be borne in mind:

Its title declares it to be an Act to amend the Interstate Commerce Act by providing for the regulation of motor carriers operating in interstate or foreign commerce. In its declaration of policy it expresses the intent "to cooperate with the several states".

### Section 202-B provides:

"The provisions of this part apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce."

By Section 203 (10) it is provided:

"The term 'interstate commerce' means commerce between any place in the state and any place in another state, or between places in the same state through another state."

This court is unable to find any grant of power to the Interstate Commerce Commission to regulate or control either the hours of work or wages of employees engaged by such trucking operator whose permit restricts it to operations wholly within the State of Ohio. Indeed, the Motor Carrier Act recognizes that it has no such power by exempting the Ohio Trucking Company from obtaining from it a certificate authorizing it to transport property or passengers where the state in which such carrier operates has a Board or Commission authorized to grant such authority. In Ohio defendant can only operate its trucks upon certificate granting such right issued by the Public Utilities Commission. Provisions with reference to the powers and duties of the Public Utilities Commission in motor transportation will be found in §§614-84 to 614-102a, GC. Sections 614-97 and 614-97a GC contain the provisions with reference to the qualifications of drivers of such motor vehicles and license to be issued to such drivers and their hours of service, etc.

Accordingly this court is clearly of opinion that under the allegations of the amended petition the Interstate Commerce Commission has no power or authority to regulate the hours, etc., of the drivers of defendant operator, and therefore Section 13 of the Fair Labor Standards Act is inapplicable.

There remains for consideration the question whether employees of defendant intrastate motor carrier are engaged in interstate commerce within the meaning of the Fair Labor Standards Act of 1938.

It is true, as pointed out in Walling v Goldblatt Bros., 128 Fed. (2d), 778, and Overstreet v North Shore Corporation, 128 Fed. (2d), 450, that Congress in enacting the Fair Labor Standards Act of 1938 substituted for the words "affecting commerce" the words "in commerce", but the conclusion reached in said decisions that such Act did not contemplate broad limitations such as "stream of commerce", "current of commerce", "burdening, affecting or obstructing commerce", does not in view of the decisions of the Supreme Court of the United States hereinafter referred to, and the decisions of the U. S. Circuit Court of Appeals for our own Sixth Circuit. seem to be strictly correct. As pointed out by Simons, Circuit Judge, in Walling v Sanders, et, hereafter referred to, there is the

"difficulty that confronts a court in delineating the area which

Congress has taken over for national supervision of employer-employee relationships in fields hitherto considered within the domain reserved to the states * * *. Since abandonment of old distinctions between what is national and what is local, the Congress has not, in commendable ventures in social legislation, granted to administrative bodies coextensive spheres of authority."

In Kirschbaum v Walling, 316 U. S., 517, the Supreme Court on June 1, 1942, reached the conclusion that the Fair Labor Standards Act, defining employees engaged in commerce or in the production of goods for commerce, must be construed in the context of the history of federal absorption of governmental authority over industrial enterprise. and in that particular case held an elevator operator in a building rented out to people engaged in the production of goods for interstate commerce was entitled to the benefits of the Fair Labor Standards Act with reference to overtime pay.

In the most recent decision of the Supreme Court of the United States, Walling v Jacksonville Paper Company, decided January 18, 1943, decided that:

"Goods shipped in interstate commerce to a distributor, destined for specific customers in the same state, are carried from the terminals of the interstate carriers to the distributor's warehouse and there unloaded before being checked and sent on to the customer, does not render the Federal Fair Labor Standards Act (52 Stat. 1060, 29 USC par. 201) inapplicable to the distributor's employees engaged in making deliveries of such goods."

Justice Douglas in rendering the court's opinion said:

"The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the Act is dependent on the character of the employees' work. A. B. Kirschbaum Co. v Walling, supra (316 U. S., p. 524, 86 L. Ed. 1648, 62 S. Ct., 1116). If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act."

The U. S. Circuit Court of Appeals for the Sixth Circuit decided three cases wherein the opinions were delivered by Simons, Circuit Judge, viz.,

Chapman, et v Home Ice Co. of Memphis, et, decided June 1, 1943;

Allesandro et v C. F. Smith Co., and Walling v Sanders et, both decided June 3, 1943.

These three cases arose in most varying circumstances and the opinions not only analyze, but consider in well reasoned conclusions the applicability or inapplicability of the Fair Labor Standards Act to most varied situations. In Chapman v Home Ice Co., Circuit Judge Simon said, in expressing the wisdom, as well as the im-

practicability, by stating in fixed terms the distinction between what goods of commerce are wholly those of a local character, or came within the domain of activities of national character:

"We are not unmindful of the fact that a rationalization based upon the doctrine of necessity may, under 'The House that Jack Built, technic, lead to absurdity and end by ignoring all practical distinction between 'what is parochial and what is national'.'"

Decisions of the Supreme Court of the United States and the Circuit Court of Appeals above referred to indicate clearly that the test of whether an employee comes within the provisions of the Fair Labor Standards Act is not whether the operations of the employer are mainly restricted to those of a local character, but depends upon the nature of the work done by such employee and its relation to or effect upon interstate commerce.

Illustration of this is the Home Ice Company case where defendant was an ice manufacturing company at Memphis, Tenn., but sold a portion of its product to railroad companies for refrigeration of perishable commodities moving in interstate commerce, and for the refreshment of passengers on interstate trains. As to the work of employees in thus producing such result. it was held that the same entitled them to the benefits of the Fair Labor Standards Act.

In the C. F. Smith Co. case defendant was a chain grocery company operating in Detroit, Michigan. The plaintiffs were drivers of delivery trucks, mechanics serving such trucks, and painters. The court's opinion reversed a directed verdict for defendant upon the ground that plaintiffs were not engaged in interstate commerce and remanded the case for findings and conclusions as to the character of the particular services performed by each claimant and its relation to interstate commerce.

In the case of Walling v Sanders et, defendant was a wholesale beer dealer at Nashville, Tennessee. The commodity it sold was trucked into Tennessee from other states and a portion therof received by rail. The beer was unloaded in its warehouse and kept for delivery to retail customers. In that case drivers of a salesman were held not to be engaged in interstate commerce and therefore not entitled to the benefits of the Fair Labor Standards Act.

Applying the principles enunciated by the federal decisions, this court is of opinion that although defendant was a local motor carrier operating under certificate of the Ohio Utilities Commission within the limits of the State of Ohio, yet as far as any of its employees' services related to the picking up in Ohio of freight coming into that state in interstate commerce and carried to some point in Ohio, or vice versa, such services of such employees were in interstate commerce.

It follows from the foregoing that the demurrer to the amended petition will be overruled.